[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] SUPPLEMENTAL MEMORANDUM OF DECISION
Plaintiff has moved for reconsideration of the Court's memorandum of decision dated January 5, 1999. The plaintiff's motion for reconsideration is dated March 11, 1999. The parties argued the motion before this Court and submitted briefs, and a hearing was held before this Court on December 11, 2000. The Court ordered the plaintiff to file a brief on his claim of a prescriptive easement and anything else stemming from the December 11, 2000 hearing that he might wish to bring before the Court. As of December 22, 2000 the Court had not received anything from the plaintiff, but by letter of that date Attorney Vitrano representing the defendants submitted portions of the trial transcript which contained part of his cross-examination of the plaintiff which Attorney Vitrano requested that the Court consider in making its decision on the Motion for Reconsideration. The Court has read all of that transcript submitted by Attorney Vitrano. Then, by memorandum dated January 3, 2001, the plaintiff submitted a Supplement to Motion for Reconsideration which the Court has also reviewed. Attorney Vitrano was called by the clerk asking if he wished to respond to that, and he said he would not.
Based upon all of the above, the testimony at the trial, the briefs submitted by the parties, the exhibits, the transcripts, the hearings, CT Page 2041 and the last two items submitted by the parties, the Court finds as follows:
1. The Court previously found the plaintiff to be a very credible witness. Plaintiff testified that animals were kept in the northeast corner of the premises from 1952 until 1962 when the plaintiff purchased the property and from 1962 until Mrs. McDonough occupied the premises in 1976, a period exceeding 15 years. However, his testimony is contradicted on Page 409 of the transcript submitted by Attorney Vitrano in which he says that the area had not been used for animals since the Mortonsons ceased using it, and that was in 1944. There is no evidence as to how long the animals had been kept there prior to 1944. Accordingly, there is not clear and convincing evidence that the northeast corner was used continuously for the placement of animals for a period of at least 15 years.
2. However, even though the area might not have been used for animals, part of the northeast corner did have a fence on it maintained by the occupants of the property. Based upon the testimony of the plaintiff, the Court finds by clear and convincing evidence that there was a fence from a point on the northerly line of the disputed area ten feet westerly of the northeast corner of said disputed area which fence then proceeded down southerly or southeasterly to a dead tree as shown on Court Exhibit 1 being the latest map prepared by Kratzer Jones Assoc. Inc., dated September 7, 1998, revised as of September 5, 2000. The fence ran southerly or southeasterly from the dead tree to a point marked on plaintiff's Exhibit 7 as "FENCE POST ON GROUND", at which point the fence turned on a 900 angle and then westerly to the area already granted to the plaintiff by the initial Memorandum of Decision which point is just below what is shown as "HUB AND TACK AS PER MAP REFERENCE #2" on Court exhibit 1 and just below the point marked as "EXIST. HUB/TK", on plaintiff's exhibit 7. The westerly boundary of said fenced in area was the line of trees or shrubs as shown on plaintiff's Exhibit 7. The fence was there for the purpose of keeping the animals westerly of the fence. The fence was there from at least 1952 until 1962 when the plaintiff purchased the property and from 1962 until Mrs. McDonough occupied the premises in 1976. This is based upon testimony of the plaintiff on page 374 of the transcript and page 373 of the transcript submitted by the plaintiff attached to the plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Reconsideration dated December 9, 1999. Although it is true that the animals may not have been in that area for that fifteen year period of time, it is true that the fence remained as indicated for a continuous 15 year period, open and notorious.
3. Accordingly, the Court finds by clear and convincing evidence that CT Page 2042 the area of the fence just described and the area westerly thereof and northerly thereof is awarded to the plaintiff by adverse possession, and the Court's Exhibit 1 shall be changed to add this amount of property.
4. In reviewing the plaintiff's supplement to Motion for Reconsideration dated January 3, 2001, it appears to the Court that the plaintiff has referred to the northeast corner where there is an existing axel. The Court believes plaintiff is referring to the existing axel shown as "EXIST. AXEL." as shown on plaintiff's Exhibit 1, and Court Exhibit 1 as "EXISTING AXEL" in the southeast corner. Based upon the testimony of the plaintiff the Court does find by clear and convincing evidence that the axel has been evidence of occupation, open and notorious as a continuous occupation for more than fifteen years. The Court further finds by clear and convincing evidence that abutting the existing axel is a sandpit which he and his tenants as well as his predecessors-in-title had used continuously since 1964. Gravel was excavated from said sandpit, and the sandpit was open, notorious and continuous for at least fifteen years. Accordingly, the Court finds by clear and convincing evidence that the plaintiff is entitled to adverse possession of the axel and the abutting sandpit.
5. The plaintiff has testified that from the time he purchased the property in 1962, he walked the boundaries shown in plaintiff's Exhibit 1 with his tenants as well as all abutting property owners for a period of more than fifteen years from 1962.[1] Based upon that testimony, the Court finds that those boundaries which had pins and/or other markers were open, notorious and continuing for more than 15 years as to tenants and abutting property owners. Therefore, the Court finds, by a preponderance of the evidence, that the plaintiff is entitled to a prescriptive easement over the remaining part of the disputed area.[2]
The Court further finds that the use of the property for the prescriptive easement was made under a claim of right.
The defendant is ordered to prepare an A-2 survey by changing Court Exhibit 1 to reflect the areas of adverse possession granted herein by the Court and the area of the prescriptive easement. The additional area that would be shown as belonging to the plaintiff by adverse possession should be a shaded area similar to the shaded area already outlined on Court Exhibit 1. The area awarded to the plaintiff by prescriptive easement should also be delineated on said map. Since it is the defendant corporation that claimed the property awarded to the plaintiff by this decision and the previous memorandum of decision, the said survey is to be prepared by the defendant corporation within thirty days of the date of this memorandum of decision at the said defendant's expense. If it is not prepared and presented to the Court for approval within said thirty CT Page 2043 day period, the plaintiff may proceed to have such a survey prepared, and the defendant corporation will be liable to the plaintiff for the cost of same. The map should have a place on it which states as follows: "This map is approved as being in conformance with the memoranda of decision of the Superior Court for the Judicial District of Hartford, said memoranda of decision being dated January 5, 1999 and February 2, 2001." It should also have a place for the signature of the undersigned and the date for said signature.
Rittenband, JTR